IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| SANGVA C. CHAN, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| | ) | No. 13 C 8732 |
| v. | ) ) | Magistrate Judge |
| CAROLYN W. COLVIN, acting commissioner of Social Security, | ) ) ) ) | Maria Valdez |
| Defendant. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Sangva V. Chan ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied her claim for Social Security Disability Insurance ("SSDI") benefits. The parties have consented to the jurisdiction of this Court pursuant to 28 U.S.C. § 636(c). For the following reasons, the Court denies Plaintiff's Motion for Summary Judgment, [Doc. No. 13], and grants the Commissioner's Motion for Summary Judgment, [Doc. No. 15].

# BACKGROUND

## I. PROCEDURAL AND FACTUAL HISTORY[1]

Plaintiff has suffered from a litany of medical problems throughout her life, ranging from suicidal thoughts, depression, and asthma, to bad knees from two car accidents. Unfortunately, these problems worsened over the years, and Plaintiff thus found herself unable to continue working with her husband at their jointly-owned movie rental store. Accordingly, she filed a Title II application for SSDI benefits on February 15, 2011, alleging a disability onset date of February 1, 2011. Her application was denied initially and upon reconsideration. Plaintiff thus requested and received a hearing before an Administrative Law Judge ("ALJ"), who determined that she was not disabled at Step Five of the Social Security Administration's sequential analysis.

In her opinion, the ALJ found that Plaintiff suffered from the following severe impairments: clubfoot deformity with painful bunion on the left side; bilateral knee chondromalacia; mild degenerative joint disease; reactive airway disease/asthma; and depression. After determining that Plaintiff did not meet any listed impairment, the ALJ then calculated her Residual Functional Capacity ("RFC") and found that she could perform light work with the following exceptions: she should avoid concentrated exposure to pulmonary irritants, such as dust, fumes, odors, and smoke; and she should be limited to unskilled, routine, and repetitive tasks, with only superficial contact with coworkers and the general public.

---

[1] The following facts from the parties' submissions are undisputed unless otherwise noted.

The ALJ then consulted with a Vocational Expert ("VE") to determine if Plaintiff could perform her past relevant work or any jobs in the national economy. On the basis of her RFC assessment and the VE's testimony, the ALJ concluded that Plaintiff could not perform her past relevant work, but that she could perform other jobs that existed in significant numbers in the national economy. The ALJ thus found that Plaintiff was not disabled under the Social Security Act.

## STANDARD OF REVIEW

### I. ALJ LEGAL STANDARD

Under the Social Security Act, a person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a claimant is disabled, the ALJ conducts a five-step analysis and considers the following in order: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform her former occupation? and (5) Is the claimant unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step 3 or step 5 leads to a finding that the claimant is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step 3, precludes a

finding of disability. *Id.* The claimant bears the burden of proof at steps 1–4. *Id.* Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II. JUDICIAL REVIEW

Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Under this standard, the ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). Rather, the ALJ must simply "build an accurate and logical bridge from the evidence to his conclusion," *Clifford*, 227 F.3d at 872, and minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).

A court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841. Thus, where conflicting evidence

would allow reasonable minds to differ, the court must defer to the decision of the Commissioner. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990).

## **DISCUSSION**

On appeal, Plaintiff argues that the ALJ's decision is neither supported by substantial evidence nor based upon proper legal standards, challenging the following: (1) the ALJ's credibility finding; (2) the relative weight given to her treating physician's opinion; and (3) the content of the hypotheticals posed to the VE. Additionally, Plaintiff requests the Court to review new evidence submitted after the ALJ's decision, which she claims the Appeals Council improperly ignored. The Court will address each issue in turn.

**I. The ALJ's Credibility Finding**

Plaintiff first claims the ALJ improperly discredited her testimony that she suffers from debilitating pain and depression. To overturn an ALJ's credibility determination, a plaintiff must show that it was "patently wrong" and "lack[ing] in any explanation or support." *Jones v. Astrue*, 623 F.3d 1155, 1162 (7th Cir. 2010). This is a very deferential standard, particularly because "a reviewing court lacks direct access to the witnesses, lacks the trier of fact's immersion in the case as a whole, and lacks the specialized tribunal's experience with the type of case under review." *Carradine v. Barnhart*, 360 F.3d 751, 753 (7th Cir. 2004).

Here, the ALJ discredited Plaintiff's testimony because (1) she complained of side effects from her medication that were otherwise unsupported by the record; (2) her course of treatment was relatively conservative; (3) the objective medical

evidence and her daily activities did not support her claims of disabling limitations; (4) she did not attempt to find *any* less-strenuous work or seek assistance from any employment agencies; and (5) she (apparently) overstated the extent to which she needed her husband and an interpreter to assist with her Social Security disability claim. Plaintiff challenges each of these reasons,[2] but none of her arguments demonstrate that the ALJ was patently wrong.

With respect to the alleged side effects of her medications (namely, headaches and dizziness), the ALJ discredited those claims because Plaintiff never mentioned them to her doctors. This is a valid reason to discredit a claimant's testimony. *See Nelson v. Secretary of Health & Human Servs.*, 770 F.2d 682, 685 (7th Cir. 1985) (explaining that ALJs may discount testimony regarding side effects of medication that are unsubstantiated by objective evidence). Plaintiff, however, believes this was error, and relies on dicta from a more recent Seventh Circuit case:

> [W]e are skeptical whether claimant's failure to identify side effects undermines [her] credibility—after all, not everyone experiences side effects from a given medication, and some patients may not complain because the benefits of a particular drug outweigh its side effects.

*Terry v. Astrue* 580 F.3d 471, 477 (7th Cir. 2009). But Plaintiff gives *Terry* too generous a reading. *Terry* did not create a bright-line rule that requires remand every time an ALJ discredits a claimant for the above reasons. Instead, the Seventh

---

[2] Plaintiff also claims the ALJ discredited her testimony for her failure to obtain a Functional Capacity Evaluation ("FCE"), which was recommended by her physical therapist, Ms. Chavda. But the ALJ mentioned the FCE (in passing) merely to highlight defects in Ms. Chavda's report, which is relevant to the ALJ's discussion of the medical opinions in this case, not Plaintiff's credibility.

Circuit merely expressed skepticism about the relationship between a claimant's credibility and her failure to report side effects to her doctors. And in the absence of a bright-line rule, a more textured analysis is appropriate.

Significantly, the claimant in *Terry* complained of only drowsiness as a side effect, *id.,* which is not exactly news worthy. Here, in contrast, Plaintiff claimed that her medications caused severe headaches and dizziness. And given that she had been on the same medications for years, it was reasonable for the ALJ to expect that Plaintiff's medical records would contain at least one mention of the problem. Yet the record contains no evidence of the sort, and the ALJ thus reasonably inferred that Plaintiff's alleged side effects were not as severe as she claimed, which reflects poorly on her credibility.

Concerning Plaintiff's claims of pain and functional limitations, the ALJ found them less believable because her course of treatment had been relatively conservative: her knee problems, degenerative joint disease, clubfoot, and asthma were managed through physical therapy, chiropractic manipulation, inhalers, and occasional prednisone for asthma flare-ups; and her depression was managed through counseling sessions and medication. Moreover, as the ALJ noted, there is no evidence in the record of significant nerve root impingement, ongoing neurological abnormalities, progressive erosion of the bones/joints, or chronic pulmonary failure, which diminishes Plaintiff's claims of severe, unremitting pain and mental impairments. The ALJ found all of these reasons to detract from Plaintiff's credibility, and the Court follows suit. *See Buchholtz v. Barnhart*, 98 F.

App'x 540, 544 (7th Cir. 2004) (explaining that in making a credibility finding, ALJs may consider a claimant's course of treatment and medical evidence, or a lack thereof).

To be fair to Plaintiff, there are certain aspects of the ALJ's credibility determination that are lacking, such as her analysis of Plaintiff's daily activities and the immaterial discussion of whether Plaintiff actually needed assistance from her husband in filling out SSA forms.[3] But any error here is eclipsed by the ALJ's other, valid reasons for disbelieving Plaintiff's testimony, such as her sparse work history and minimal effort to find less-demanding employment (which Plaintiff has not challenged on appeal), as well as the general lack of support in the record for her claims (discussed above). The Court therefore affirms the ALJ's credibility finding. *See* SSR 96-7p; *Buchholtz,* 98 F. App'x at 545.

## II. Treating Physician Rule

The treating physician rule requires ALJs to give controlling weight to a treating physician's opinion if it is both "well-supported" and "not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527. If the ALJ declines to do so, then he must offer "good reasons for discounting the opinion" in light of the following regulatory factors: (1) the length, nature, and extent of the treatment relationship; (2) the frequency of examination; (3) the physician's

---

[3] The ALJ apparently found that Plaintiff could speak English perfectly well and thus concluded that she was being disingenuous about needing assistance from her husband and a translator. While the Court takes no position on Plaintiff's command of the English language, it is skeptical that the ALJ was in a position to do so. The Social Security disability process is complex and employs many terms of art, both legal and medical. It is thus entirely plausible that Plaintiff *might* have needed, or simply preferred, some assistance.

8

specialty; (4) the types of tests performed; and (5) the consistency and support for the physician's opinion. *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) (internal quotations omitted); 20 C.F.R. § 404.1527.

In that regard, Plaintiff asserts that the ALJ should have given controlling weight to the opinion of her treating physician, Dr. Esposito, who opined that she could neither perform sedentary work nor work a full eight-hour day. The ALJ, however, declined to do so because this aspect Dr. Esposito's opinion is contained in two unelaborated "checklist" reports, which were based largely on Plaintiff's subjective complaints, as opposed to clinical findings, and which Dr. Esposito merely cosigned, rather than completing himself. *See Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010) (describing the "check-box form" as weak evidence that should be supported by other medical records).

Moreover, in contrast to the above reports, Dr. Esposito's clinical notes from that time period, as well as notes from every other physician on record, support a finding that Plaintiff can perform light or medium work, which is a far cry from a complete inability to perform sedentary work. And as Plaintiff has not provided any evidence indicating otherwise, it follows that Dr. Esposito's check-list reports are nothing more than conclusory assertions of disability, which deserve little, if any, weight. *See Johnson v. Barnhart*, 314 F.3d 283, 288 (7th Cir. 2002). *See* 20 C.F.R. § 404.1527(d) (explaining that medical source opinions concerning disability are "not medical opinions . . . but are, instead, opinions on issues reserved to the [judgment of] Commissioner.")

9

### III. The ALJ's Hypotheticals

Plaintiff next argues that the ALJ erred by failing to inform the VE that she had moderate cognitive difficulties. Generally, ALJs must orient the VE to the totality of a claimant's limitations, such as deficiencies of concentration, persistence and pace. *Steele v. Barnhart, 2*90 F.3d 936, 942 (7th Cir. 2002). The Seventh Circuit does not, however, require that this specific terminology ("concentration, persistence, and pace") be used in the hypothetical in all cases, particularly where the record indicates that the VE was aware of such limitations. *O'Connor-Spinner v. Astrue,* 627 F.3d 614, 619 (7th Cir. 2010). And that is precisely what we have here: although the ALJ did not use the above language to highlight Plaintiff's cognitive limitations, the VE's responses show an awareness of the need for simple, routine tasks and limited interaction with the public. These are precisely the sort of restrictions one would expect to see in cases where a claimant has moderate difficulties with concentration, persistence, and pace. *See, e.g., Stewart v. Astrue*, 561 F.3d 679, 684-85 (7th Cir. 2009). Moreover, after the ALJ was finished questioning the VE, Plaintiff's attorney explicitly asked whether a claimant's "moderate limitation as to maintain attention and concentration" would preclude the VE's cited jobs, to which the VE answered a definitive "no." (R. 79.) The Court is thus satisfied that the VE was aware of and accounted for all of Plaintiff's limitations.

## IV. Other RFC Issues

Plaintiff's remaining contentions with the ALJ's RFC assessment are either immaterial or altogether indiscernible. For example, she claims that the ALJ erred by failing to include a restriction for using a cane in her RFC, but the ALJ both discussed her use of a cane, which was prescribed in 2011, and explained that recent examinations revealed that she was able to ambulate on her own with a full range of motion in all extremities. The Court therefore finds no error in the ALJ's failure to incorporate an assistive device into Plaintiff's RFC. As for her other claims, they are composed of intermittent citations to medical evidence (none of which supports greater restrictions in her RFC) and conclusory assertions of error on part of the ALJ. To the extent that these claims compose an argument, that argument is waived. *See U.S. v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) (explaining that perfunctory or underdeveloped arguments are waived).

## V. The Appeals Council and New Evidence

Pursuant to 42 U.S.C. § 405(g), a court may conduct a limited review of new evidence when the claimant alleges that the Appeal's Council's denial of review rests on a mistake of law. *Id.* But in the absence of any such error, the Appeals Council's decision whether to review is discretionary and unreviewable. *See Damato v. Sullivan,* 945 F.2d 982, 988 (7th Cir. 1992). To that end, Plaintiff claims the Appeals Council improperly rejected her petition to submit the following new evidence: admission records from MacNeal Hospital for suicidal ideation; and the notes of Plaintiff's treating psychiatrist, Dr. Carrier, who opined that Plaintiff was

11

unable to work because of concentration difficulties, depression, and suicidal thoughts. The Appeals Council, however, declined to review this evidence because it postdates the ALJ hearing, and the Court agrees.

The regulations plainly state that new and material evidence may be considered only if "it relates to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. § 404.970(b). Putting the issues of "new" and "material" aside, Plaintiff's argument fails for the simple reason that Dr. Carrier's recent reports and her hospital records are all from 2013, whereas the ALJ issued her decision in August 2012. It follows that this evidence does not "relate to" the period on or before the ALJ's decision. The Appeals Council's decision not to review this evidence was thus a straight-forward application of the law, rendering it unreviewable by this Court. S*ee Damato* 945 F.2d at 988.

In the alternative, Plaintiff requests the Court to review the new evidence pursuant to "sentence six" of 42 U.S.C. § 405(g), which provides as follows:

> [A district court] may . . . remand the case to the Commissioner of Social Security for further action . . . and it may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.

42 U.S.C. § 405(g). Evidence is "material" if it "relate[s] to the claimant's condition during the relevant time period encompassed by the disability application under review." *Johnson v. Apfel*, 191 F.3d 770, 776 (7th Cir. 1999). And here, too, this requirement defeats Plaintiff's request for remand. The evidence is simply beyond the temporal scope of the instant appeal.

Nevertheless, Plaintiff attempts to get around the materiality rule by arguing that Dr. Carrier's reports, although they were written in 2013, actually pertain to Plaintiff's condition during the relevant disability period. But this argument only highlights the futility of her position. Insofar as Dr. Carrier's 2013 reports are based on observations from 2012, which were indisputably before the ALJ, then they are not "new" evidence because their content is merely "derivative" of the information previously available. *See Sample v. Shalala*, 999 F.2d 1138, 1144 (7th Cir. 1993). Moreover, even if the Court were to adopt Plaintiff's generous reading of "new and material evidence," Dr. Carrier's 2013 reports are significantly different than her prior reports, which were authored contemporaneously with Plaintiff's treatment and indicate that her anxiety and depression were controlled with medication. This sort of inconsistency severely undermines the persuasive value of Dr. Carrier's opinion, thereby making it unlikely that including her 2013 reports on remand would produce a different result. Any error in this regard would therefore be harmless.

In the end, it bears emphasis that the materiality requirement does not stand in the way of a fresh application for benefits based on newly-developed or worsened impairments. But the decision before the Court is whether the ALJ's findings were based on substantial evidence, which they were. The Court therefore affirms the ALJ's decision in its entirety.

**CONCLUSION**

For the following reasons, the Court denies Plaintiff's Motion for Summary Judgment, [Doc. No. 13], and grants the Commissioner's Motion for Summary Judgment, [Doc. No. 15].

**SO ORDERED.**  **ENTERED:**

*[signature: Maria Valdez]*

**DATE:   June 3, 2015**

                                              **HON. MARIA VALDEZ**
                                              **United States Magistrate Judge**